[Cite as *Carroll v. Grafton*, 2014-Ohio-4534.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

LONNIE CARROLL

    Appellant

    v.

VILLAGE OF GRAFTON

    Appellee

C.A. No.     13CA010380

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    12 CV 177794

DECISION AND JOURNAL ENTRY

Dated: October 14, 2014

CARR, Judge.

**{¶1}** Appellant, Lonnie Carroll, appeals the judgment of the Lorain County Court of Common Pleas. This Court affirms.

I.

**{¶2}** The Village of Grafton employed Mr. Carroll as chief of police until August 27, 2012, when he was placed on paid administrative leave by the mayor and informed that his employment was terminated subject to concurrence by a vote of the village council. Council confirmed the termination by majority vote at a special meeting held the following day. Mr. Carroll filed an action seeking declarations that the Grafton chief of police is not an at will employee; that the chief of police may only be terminated for cause, as provided by R.C. 737.171; that his termination was unlawful; and that he is entitled to reinstatement. The parties filed cross-motions for summary judgment on the legal questions involved. The trial court granted the Village's motion, concluding that the Village's Charter conflicted with the provisions

of R.C. 737.171 and that, because the Charter provisions controlled, Mr. Carroll's employment was properly terminated under the provisions of the Charter. Mr. Carroll appealed.

II.

**ASSIGNMENT OF ERROR**

> THE TRIAL COURT ERRED IN GRANTING [THE VILLAGE'S] MOTION FOR SUMMARY JUDGMENT AND DENYING [MR. CARROLL'S] CROSS-MOTION FOR SUMMARY JUDGMENT.

{¶3}   Mr. Carroll's assignment of error is that the trial court erred in its determination that the Charter conflicts with R.C. 737.171 with respect to the termination of the chief of police. Consequently, Mr. Carroll's position is that the relevant Charter provisions must be harmonized with the statute. We do not agree.

{¶4}   Under Civ.R. 56(C), "[s]ummary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law." *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, ¶ 10. This Court reviews an order granting summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶5}   Article XVIII, Section 3 of the Ohio Constitution grants municipalities the authority "to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." When a municipality exercises its home rule powers on a matter of local self-government, conflicting charter provisions prevail over parallel state laws. *State ex rel. Lightfield v Indian Hill*, 69 Ohio St.3d 441, 442 (1994). A threshold issue, therefore, is whether charter provisions conflict with state laws addressing the same subject matter.

{¶6}   In that respect, "[m]unicipal charters are to be so construed as to give effect to all separate provisions and to harmonize them with statutory provisions whenever possible." *State ex rel. Paluf v. Feneli*, 69 Ohio St.3d 138, 142 (1994).  "In the absence of express language in a charter demonstrating a conflict with a statute, it is the duty of courts to harmonize the provisions of the charter and statutes relating to the same matter." *State ex rel The Ryant Commt. v. Lorain Cty Bd. of Elections*, 86 Ohio St.3d 107, 112 (1999).  In other words, "[t]he rule of charter supremacy applies only where the conflict appears by the express terms of the charter and not by mere inference." *State ex rel. Regetz v. Cleveland Civ. Serv. Comm.*, 72 Ohio St.3d 167, 170 (1995), quoting *State ex rel. Ryan v. Kerr*, 42 Ohio App.19, 25 (8th Dist.1932).  Nonetheless, when a municipal charter sets forth a procedure that differs from that required by a statute, the charter procedure has been held to supplant State law in its entirety even though it may be silent on specific issues upon which the relevant statute speaks.  *See*, *e.g.*, *State ex rel. Kohl v. Dunipace*, 56 Ohio St.2d 120 (1978); *State ex rel. Bindas v. Andrish*, 165 Ohio St. 441 (1956), syllabus; *Esarco v. Tarpley*, 7th Dist. Mahoning No. 08 MA 48, 2008-Ohio-4516.

{¶7}   In this respect, the Ohio Supreme Court has concluded that when a municipal charter includes language regarding a subject, it can be inferred that the charter provisions reflect the municipality's intent to fully supplant statutes that would otherwise apply.  *See Andrish* at 445 ("[B]y specifying that its councilmen shall have certain specific qualifications, the people of Youngstown in their charter have inferentially expressed an intention that those are to be the only qualifications required of them. *Expressio unius est exclusio alterius*.")  When a municipal charter provides some procedure for the termination of its employees, it creates a conflict sufficient to require that the charter provisions apply instead of relevant statutes.  *Murphy v. Village of Powell*, 5th Dist. Delaware Nos. 95-CA-E-12-093, 95-CA-E-12-095, 1996 WL

488017, * 2 (July 29, 1996). In *Murphy*, for example, the village charter provided that the municipal administrator was tasked with appointing, promoting, disciplining, transferring, demoting, and discharging employees, subject to the authority of the mayor. *Id*. The Fifth District Court of Appeals concluded that this general language conflicted with – and therefore supplanted – application of R.C. Chapter 737 with respect to the employment of a police officer. *Id.*

{¶8} The situation presented in this case is similar. R.C. 737.171 describes the statutory procedure that applies to the removal of a municipal police chief from office:

> Except as provided in section 737.162 of the Revised Code, if the mayor of a village has reason to believe that a duly appointed marshal of the village has been guilty of incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, or any other acts of misfeasance, malfeasance, or nonfeasance in the performance of the marshal's official duty, the mayor shall file with the legislative authority of the village written charges against that person setting forth in detail the reason for the charges and immediately shall serve a true copy of the charges upon the person against whom they are made.
>
> Charges filed under this section shall be heard at the next regular meeting of the legislative authority occurring not less than five days after the date those charges have been served on the person against whom they are made. The person against whom those charges are filed may appear in person and by counsel at the hearing, examine all witnesses, and answer all charges against that person.
>
> At the conclusion of the hearing, the legislative authority may dismiss the charges, suspend the accused from office for not more than sixty days, or remove the accused from office.
>
> Action of the legislative authority removing or suspending the accused from office requires the affirmative vote of two-thirds of all members elected to it.
>
> In the case of removal from office, the person so removed may appeal on questions of law and fact the decision of the legislative authority to the court of common pleas of the county in which the village is situated. The person shall take the appeal within ten days from the date of the finding of the legislative authority.

The terms of the statute, therefore, provide that a termination will be initiated by a mayor by filing charges with the legislative authority, considered at a hearing by the legislative authority after the police chief is afforded notice, and ultimately given effect by a 2/3 vote of the legislative authority. *Id.* In this context, the statute also provides that a municipal police chief can only be terminated for cause, which is in turn defined: "incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, or any other acts of misfeasance, malfeasance, or nonfeasance in the performance of * * * official duty."

**{¶9}** A comparison of the Charter and the statute demonstrates that the Charter sets forth a different process. Under its terms, "[t]he Police Chief shall be appointed by the Mayor with the approval of the majority of the membership of Council. He or she may be removed from office by the Mayor, but such removal shall not take place without the concurrence of the majority of the membership of Council." The Charter is silent regarding the processes through which the removal is communicated to Council and Council considers the matter, but R.C. 737.171 explains that written charges are filed with the legislative authority and served upon the police chief. The statute also provides a timeline and procedure for Council to consider the removal and for the police chief to be heard. The Charter is silent with respect to appeal rights, but R.C. 737.171 explains how a police chief may appeal removal. While the statute explicitly states that a police chief can only be terminated for cause, the Charter is silent.

**{¶10}** The Village's Charter sets forth a procedure that differs from that provided in R.C. 737.171. Specifically, it is notable that under R.C. 737.171, a mayor may bring charges against a police chief, but only a legislative authority can terminate a police chief's employment. Under the Charter, however, the mayor has the authority to remove the police chief, and the

removal is effective upon the concurrence of a simple majority of council members. The Charter's procedure is silent with respect to some other issues upon which R.C. 737.171 speaks, but in light of the explicit conflict, we are not compelled to fill those silences by resort to R.C. 737.171. *See Andrish*, 165 Ohio St. 441, at paragraph three of the syllabus.

{¶11} The provisions of the Charter conflict with the procedure set forth in R.C. 737.171, and, therefore, the provisions of the Charter control with respect to the termination of the police chief. The trial court did not err by granting summary judgment to the Village, and Mr. Carroll's assignment of error is overruled.

III.

{¶12} Mr. Carroll's assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT


WHITMORE, J.
CONCURS.

BELFANCE, P. J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶13} I concur with respect to the majority's conclusion that the Charter controls the removal process of a police chief but dissent from its conclusion that the Charter also controls the substantive reasons or conditions which would allow for removal of the police chief because the Charter does not clearly and expressly supersede and override the provisions of R.C. 737.171 on the same subject.

{¶14} "In matters of local self-government, if a portion of a municipal charter expressly conflicts with a parallel state law, the charter provisions will prevail." *State ex rel. Lightfield v. Indian Hill,* 69 Ohio St.3d 441, 442 (1994). "A municipality must clearly and expressly state the areas where the municipality intends to supersede and override general state statutes." *Id.* at 443. "[I]n the absence of express language in a charter demonstrating a conflict with a statute, it is the duty of courts to harmonize the provisions of the charter and statutes relating to the same matter." (Internal quotations and citations omitted.) *State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections,* 122 Ohio St.3d 462, 2009-Ohio-3657, ¶ 31.

{¶15} Because the Charter provides a procedure to remove the police chief that is expressly in conflict with the statute, I concur that the Charter controls with respect to the removal process. I diverge from the majority's analysis when it uses this conflict to conclude

that the Charter also controls the circumstances under which a police chief may be removed. R.C. 737.171 expressly delineates the reasons and circumstances for removal of a police chief. In particular, the statute provides for removal for cause: the statute lists "incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, or any other acts of misfeasance, malfeasance, or nonfeasance in the performance of the marshal's official duty" as reasons for discharge. *See* R.C. 737.171. The Charter, however, does not address in any manner the circumstances under which it is appropriate to remove a police chief. Thus, this is not an area where the municipality has clearly and expressly stated its intention to act contrary to the statute. The substantive question of what constitutes removable conduct is entirely different and distinct from the procedure that is authorized to effectuate that removal. Thus, I do not think it is appropriate to say that, because the procedure for removal conflicts with the statute, then the behavior that warrants removal also must be governed by the Charter. The only conflict between the Charter and the statute is in the area concerning the procedure for removal. Accordingly, because I see no express conflict between the statute and the Charter with respect to what constitutes removable conduct, the statute and Charter should be harmonized. *See State ex rel. Finkbeiner* at ¶ 31. As the statute requires cause for removing the police chief, *see* R.C. 737.171, Mr. Carroll was entitled to a declaration that he could only be terminated for cause as provided by R.C. 737.171.

APPEARANCES:

KEVIN POWERS, Attorney at Law, for Appellant.

CARA M. WRIGHT, Attorney at Law, for Appellee.